IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KHUSEN KHUDAEV,

        Petitioner,

v.                                            **No. 2:25-cv-01291-KWR-JHR**

WARDEN DORA CASTRO and
FNU LNU,

        Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Pro Se Petitioner Khusen Khudaev's Amended

Petition for Writ of Habeas Corpus [Doc. 3] ("habeas petition"). District Judge Kea W. Riggs

referred this matter to me pursuant to 28 U.S.C. § 636 on January 14, 2026, to submit proposed

findings and a recommended disposition. [Doc. 4]. Respondents filed a response to the petition on

January 28, 2026, [Doc. 9], and Petitioner did not file a reply. Respondents filed supplemental

briefing on March 24, 2026, [Doc. 23], and Petitioner filed a response on April 13, 2026. [Doc.

26].[1] Having reviewed the briefing, record, and applicable law, I RECOMMEND that the Court

GRANT IN PART Petitioner's habeas petition and order Petitioner's release on parole.

## I.    PROCEDURAL BACKGROUND

**A.    Petitioner's Original Detention.**

The material facts of this case are not contested. On December 28, 2021, Border Patrol

detained Petitioner pursuant to 8 U.S.C. § 1225 in Arizona near the U.S. border. [Doc. 9-1, at 1].

Petitioner admitted to his detaining officer that he had entered the United States without inspection

---

[1] Petitioner's response was filed on April 13th and appears to have been mailed on April 9th, which exceeds the permitted fourteen-day response window either way. Whether or not the Court elects to consider or exclude the response as a result, it does not change my recommendation.

and not at a designated port of entry on or about December 23, 2021, and the officer determined Petition made a credible fear claim to apply for asylum. *Id.* at 1–2. Border Patrol released him on his own recognizance for "humanitarian purposes" while his immigration case proceeded. *Id.* at 3. Petitioner enrolled in Immigration and Customs Enforcement's ("ICE") "alternative to detention program" as part of his release. *Id.*; [Doc. 9, at 3]. Petitioner received a notice from the officer to appear before an immigration judge in New York City on February 15, 2022. [Doc. 9-2, at 1].

According to Respondents, for "unclear" reasons the Department of Homeland Security ("DHS") never filed Petitioner's notice with the proper immigration court. [Doc. 9, at 3]. Respondents state that DHS began removal proceedings against Petitioner in early 2022 but failed to prosecute for years. *Id.*; [Doc. 9-4, at 1]. Petitioner's application for asylum, formally filed March 28, 2022, remained active but no credible fear interview was conducted. *See* [Doc. 9-5]; [Doc. 9, at 3–4]. Respondents' exhibits show the alternative to detention program terminated Petitioner's enrollment for violation of terms in 2023; nonetheless, Border Patrol "processed" him as paroled on July 20, 2024, in Lewiston, New York. [Doc. 9-3, at 5].[2]

**B.    Petitioner's July 2025 Detention.**

On July 15, 2025, Border Patrol stopped Petitioner and his brother at an inspection checkpoint in the District of New Mexico between Alamogordo and El Paso, Texas. [Doc. 9-3]. When asked, Petitioner informed the officers of his foreign citizenship and produced an employment authorization card. *Id.* An officer documented Petitioner's immigration history, parole, and lack of criminal charges or warrants. *Id.* Border Patrol determined Petitioner was inadmissible and detained him for expedited removal pursuant to 8 U.S.C. § 1225(b)(1). *Id.*

---

[2] The United States suggests this parole may refer to Petitioner's brother Khasan Khudaev, but the Border Patrol agent documents the parole as Petitioner's and the United States offers no basis to doubt its accuracy. [Doc. 9, at 4 n. 7].

**C.      Petitioner's Habeas Proceedings and Supplemental Briefing.**

Due to his detention, DHS dismissed Petitioner's original asylum application with an option to request a new credible fear interview. [Doc. 9-13]. Petitioner filed a habeas petition on December 23, 2025, after five months of detention without progress on his immigration case. [Doc. 1]. The Court ordered Respondents to answer, but before they did so Petitioner filed an amended petition on January 9, 2026. [Doc. 3].

After Respondents filed a response on January 28, 2026, I set a hearing for February 17, 2026. On February 12, 2026, Respondents filed notice that an asylum officer found Petitioner established a credible fear of persecution or torture on February 11th. [Doc. 11]. Respondents informed the Court that Petitioner's new asylum application would be prioritized for resolution. *Id.* at 2. I attempted to hold remote status conferences with the parties on February 17th and March 2nd, but connectivity issues with Otero County Processing Center prevented a full hearing. [Doc. 13 text only, Doc. 16 text only]. However, Respondents briefed the Court that Petitioner had received a bond hearing before an immigration judge on March 5, 2026, at which the judge determined Petitioner could not receive bond due to his detention under 8 U.S.C. § 1225(b)(1). [Doc. 17-1] (Citing *Matter of M-S-*, 27 I & N Dec. 509 (A.G. 2019)).

On March 20, 2026, I held an in-person status conference and oral arguments. [Doc. 22 text only]. The parties informed me that Petitioner had a hearing for a final decision on his asylum application scheduled for April 30th. I questioned the United States'[3] counsel on the meaning of "inspection" under 8 U.S.C. § 1225(a)(3) and its effect on this case. Because counsel was

---

[3] The United States is Respondent "FNU LNU." Although the heading of the case has not yet been updated, this party is understood by this Court to represent the Attorney General, the Secretary of DHS, Mary de Anda-Ybarra, the El Paso Filed Office Director of ICE, and Todd M. Lyons, the acting direction of ICE. *See* Standing Order, *In re Service of Process in Immigration Habeas Petitions Filed Pursuant to §§ 2241 et seq.*, No. 1:26-mc-00004 (D.N.M. Jan. 28, 2026); *see also* Fed. R. Civ. P. 21, 25(d).

unprepared to address that issue, I ordered supplemental briefing from the United States and allowed Petitioner time to respond. The United States filed the supplemental briefing on March 24, 2026, to which Respondent Castro joined. [Docs. 23, 24]. Petitioner's response was filed on April 13th. [Docs. 26].

## II.    **APPLICABLE LAW**

### A.    **Detention Under 8 U.S.C. § 1225.**

Two statutes govern the detention of aliens pending removal and the availability of bond. The first, 8 U.S.C. § 1225, generally applies to aliens who are not yet in the country and "seeking admission" into the United States. *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1225 begins by defining who will be "treated" like an "applicant for admission":

> An alien **present** in the **United States** who has **not been admitted or who arrives** in the United States (**whether or not at a designated port of arrival** and including an alien who is brought to the United States after having been interdicted in international or United States waters) **shall be deemed** for purposes of this chapter an **applicant for admission**.

8 U.S.C. § 1225(a)(1) (emphasis added). Congress defined "admission" as "the lawful entry of [an] alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). Application for admission, in turn, refers specifically to admission "into" the United States and not applications for immigrant or nonimmigrant visas. *Id.* § 1101(a)(4).

Section 1225(a)(3) directs immigration officers to inspect all aliens who are "**applicants for admission or otherwise seeking admission** or readmission to or transit through the United States." (emphasis added). After inspection, § 1225(b) mandates detention for certain applicants for admission. An immigration officer must detain an alien who is either "arriving in the United

4

States" or "described in clause (iii)"[4] and is inadmissible due to immigration-related fraud or failure to present valid immigration and identification documents. 8 U.S.C. § 1225(b)(1)(A)(i). If an alien is subject to § 1225(b)(1), they must be "removed . . . without further hearing" unless they seek asylum, at which point they must be detained for further proceedings. *Id.*

If an applicant for admission is not subject to expedited removal, § 1225(b)(2)(A) will govern unless an exception is triggered. *Id.* § 1225(b)(2).[5] The section reads as follows: "[I]n the case of an **alien who is an applicant for admission**, if the examining immigration officer **determines** that **an alien seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." *Id.* § 1225(b)(2)(A) (emphasis added). If an alien is properly detained under § 1225(b), the statute prohibits bond. *Jennings*, 583 U.S. at 288–89. However, the alien may still receive parole for "urgent humanitarian reasons or significant public benefit." *Id.*; 8 U.S.C. § 1182(d)(5)(A).

**B.    Detention Under 8 U.S.C. § 1226.**

8 U.S.C. § 1226 empowers the Attorney General to detain "certain aliens already in the country" pending their removal proceedings. *Jennings*, 583 U.S. at 281, 289. Section 1226(a) further empowers the Attorney General, "except as provided in subsection (c)," to release detained aliens on bond or conditional parole. 8 U.S.C. § 1226(a)(2). But subsection (c) requires detention without bond of any alien who:

> is **inadmissible** by reason of having committed any offense covered in section **1182(a)(2)** . . . **deportable** by reason of having committed any offense covered in **section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)** . . . **deportable** under section **1227(a)(2)(A)(i)** of this title on the basis of an offense for which the

---

[4] "Clause (iii)" aliens are aliens who (1) have not been admitted or paroled into the country, (2) cannot establish physical presence in the country for at least two years prior to their inspection, and (3) have been designated for expedited removal by the Attorney General. 8 U.S.C. § 1225(a)(1)(A)(iii)(II).
[5] Section 1225(b)(2)(A) does not apply to alien crewman, stowaways, and aliens arriving from a contiguous foreign territory. 8 U.S.C. § 1225(b)(2)(B), (C).

alien has been sentence[d] to a term of imprisonment of at least 1 year . . . is **inadmissible** under **section 1182(a)(3)(B)** of this title or **deportable** under section **1227(a)(4)(B)** of this title, **or** . . . is **inadmissible** under **paragraph (6)(A), (6)(C), or (7) of section 1182(a)** of this title; and . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1) (emphasis added). The Supreme Court held that §§ 1226(a)(1) and 1226(c)(1) are not separate provisions, but rather § 1226(c)(1) limits the discretion granted to the Attorney General under §1226(a)(1). *Neilson v. Preap*, 586 U.S. 392, 409 (2019). Given § 1226(c)'s reference to both 8 U.S.C. §§ 1227 and 1182, § 1226(a) empowers the Attorney General to arrest, detain, and release on bond or parole both deportable and inadmissible aliens who do not fit the exceptions found in § 1226(c). *See id.*; *see Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020); *see Barton v. Barr*, 490 U.S. 222, 223 (2020).

### III.    <u>SUMMARY OF ARGUMENTS</u>

**A.    Initial Briefing.**

Petitioner argues his denial of bond violates both statute and due process. [Doc. 3, at 1]. Petitioner asserts that the United States' reliance on § 1225(b) to deny bond contradicts the "vast majority" of district courts who have found § 1226(c) governs aliens like himself. *Id.* at 7. In addition, Petitioner argues the order issued in the class action *Maldonado Bautista v. Santacruz* in the Central District of California applies to him as a putative class member and entitles him to relief. *Id.* at 8–9. Petitioner requests that the Court set a bond amount and terms of release. *Id.* at 4–6.

Respondents maintain that denying Petitioner an opportunity for release is proper under § 1225(b). Initially, Respondents asserted that § 1225(b)(2) governed. [Doc. 9, at 2]. Respondents argue § 1225(b)(2) clearly prohibits bond for all "applicants for admission" whom an immigration

officer determines inadmissible. *Id.* at 6–7. Because applicants for admission include aliens "present" in the United States "who have not been admitted," any alien who, like Petitioner, entered the United States without inspection must be detained pending removal or a grant of asylum. *Id.* At oral argument, the United States asserted the same reasoning applied but Petitioner's detention is instead governed by § 1225(b)(1).

**B.      Supplemental Briefing on the Meaning of "Inspection."**

The United States argues that "inspection" under § 1225(a)(3) has no definition, but federal regulation limits it to the first examination of an alien's admissibility at a port of entry. [Doc. 23, at 1]. Thus, no "inspection" can occur if an alien fails to present at a port to an immigration officer. *Id.* at 2. Furthermore, no alien who enters the country outside of a port of entry can be "inspected," even if stopped and questioned by immigration officers at the border upon arrival. *Id.* at 2. As a result, Petitioner was not "inspected" by Border Patrol agents within the meaning of § 1225(a)(3) in either 2021 or 2025. *Id.* However, the United States argues that in light of the parole Petitioner received in 2021, its revocation and Petitioner's continued detention is valid under 8 C.F.R. § 212.5. *Id.*

Petitioner responds that the United States' interpretation of "inspection" is overly narrow. [Doc. 26, at 2]. Petitioner argues his encounter with Border Patrol in 2021 constituted an "inspection" as he was questioned about his identity and background then granted release on parole. *Id.* at 2. Petitioner further argues that a § 1225(a)(3) inspection does not "reset" if an alien is released but not admitted, as the alien's physical presence in the country on parole with permission of the United States precludes § 1225(b)'s application even if the alien's parole is later revoked. *Id.* at 2–3..

## IV.    ANALYSIS

7

Before reaching the merits, I recommend the Court find that the March 5th bond hearing did not deprive the Court of subject-matter jurisdiction or otherwise moot the petition. Second, I recommend the Court find that Petitioner was detained and paroled under § 1225(b)(2) in December 2021, which continues to govern his case. Third, I recommend the Court conclude the United States violated Petitioner's statutory and procedural due process rights by detaining him for nine months without proper revocation of parole. In conclusion, I recommend the Court order Petitioner's immediate release consistent with its prior decisions. Because I recommend the Court find that Petitioner's detention is unlawful, I do not address his class action argument.

**A.     The March 5th Bond Hearing Does Not Deprive the Court of Subject-Matter Jurisdiction nor Moot the Habeas Petition.**

I recommend the Court find that it may still exercise jurisdiction over Petitioner's habeas petition despite the March 5th bond hearing. At the hearing, the immigration judge held that § 1225(b)(1) applies to Petitioner's detention. [Doc. 17-1]. The Immigration and Nationality Act contains several jurisdictional carveouts specific to that provision. 8 U.S.C. §§ 1252(a)(2)(A), 1225(e). However, the March 5th bond hearing did not trigger those carveouts. The statutory and constitutional dispute here continues to be one of statutory interpretation with respect to bond and parole for aliens, not a challenge to any order or removal, the process of determining whether removal is proper, or any other finding pursuant to the proper application of § 1225. *See Sanchez v. Noem*, --- F. Supp. 3d ----, 2026 WL 473094, at *2 (D.N.M. Feb. 19, 2026). Furthermore, because the March 5th determination continued to apply § 1225(b) to Petitioner's detention and opportunity for bond, I recommend the Court find the dispute remains justiciable. *See Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1239 (D.N.M. 2025).

**B.      I recommend the Court Find that Petitioner's Detention is Governed by § 1225(b)(2) Because of His Detention and Parole in 2021.**

8

First, I recommend the Court find that Petitioner's encounter with border patrol in December 2021 was an inspection, detention, and parole pursuant to §§ 1225(b)(2) and 1182(d)(5)(A). The parties do not dispute that Petitioner was an "applicant for admission" upon his arrest in December 2021. However, the parties dispute whether or not the admissibility determination made by Border Patrol constituted an inspection pursuant to § 1225(a)(3). [Docs. 23, 26].

    *1.*    *Inspections under § 1225 include the examination of aliens on the "threshold" of entry.*

No detention of an alien pursuant to § 1225(b) can occur unless an "inspection" by an immigration officer leads them to determine the alien is inadmissible. *Cortez-Gonzales v. Noem*, 811 F. Supp. 3d 1287, 1296 (D.N.M. 2025); *see also Romero v. Hyde*, 795 F. Supp. 3d 271, 283 (D. Mass. 2025). The United States argues an "inspection" can only occur at a port of entry. [Doc. 23, at 2]. This interpretation would mean that every arrest of an alien outside of a port of entry exceeds the detention authority granted by § 1225, triggering § 1226 instead. Therefore, the United States' argument would concede Petitioner's detention without bond under § 1225 is unlawful.

However, I recommend the Court find that § 1225(a)(3) inspections are not limited to ports of entry. Neither § 1225 nor the definitional statute, 8 U.S.C. § 1101, defines "inspection." When statutory language lacks an express definition, courts turn to its ordinary meaning, context in surrounding provisions, and the statute's schema as a whole. *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, 157 F.4th 1235, 1250 (10th Cir. 2025). One dictionary defines *inspection* as "the checking or testing of an individual against established standards"; to *inspect*, in turn, is defined as "to view closely in critical appraisal," "look over," or "examine officially." Merriam-Webster's Collegiate Dictionary (11th ed. 2020). Section 1225(a)(3) instructs officers to determine the admissibility of "applicants for admission" and aliens "otherwise seeking admission" or transit

through the United States. Given the statutory definition of "admission" under § 1101(a)(13)(A), "inspection" is best understood as an examination to determine whether an alien satisfies the legal criteria for lawful, physical entry into the United States under § 1182. *See Sanchez*, 2026 WL 473094, at *5. But nothing in these definitions speak to where such an examination must occur.

The Immigration and Nationality Act elsewhere uses "inspection" in the context of aliens crossing the country's borders. The search powers of inspecting officers include the boarding of any conveyance or vehicle believed to have aliens "being brought into the United States," and to order the person in charge of those vehicles to detain and deliver the alien "for inspection." 8 U.S.C. § 1225(d)(1), (2). An alien can violate immigration law by entering the United States "without inspection." 8 U.S.C. § 1325(a). The Attorney General has the "power to enter contracts with transportation lines for the inspection and admission of aliens coming to the United States from foreign territory or from adjacent lands." *Id.* § 1223(a). Inspecting officers may indirectly receive additional compensation for their work from "the master, owner, agent, or consignee of such vessel or other conveyance arriving in the United States from a foreign port." *Id.* § 1353b. While these provisions are not conclusive on their own, this context combined with the fact that an alien can be found inadmissible if they don't receive inspection until after they've entered the country establishes that § 1225 intends for inspections to occur at the country's "threshold." *See* 8 U.S.C. § 1182(a)(6)(A); *see also Requejo Roman v. Castro*, --- F. Supp. 3d ----, 2026 WL 125681, at *5 (D.N.M. Jan. 12, 2026) (interpreting inspections and "seeking admission" together).

With the "threshold" focus established, limiting § 1225(a)(3) further to ports of entry would render § 1225(a)(1) superfluous. Under § 1225(a)(1), aliens arriving or already in the United States, whether at a port of entry or another location along the country's borders, are "applicants for admission" if they haven't been admitted by an immigration officer. This inclusion means

10

Congress contemplated at least some § 1225(a)(3) inspections could occur outside of a port of entry. I recommend the Court find Supreme Court caselaw on the Fifth Amendment persuasive on this point. The Supreme Court has repeatedly stated that under the Due Process Clause, mere presence on U.S. soil does not "effect" entrance such that an alien who has entered unlawfully is beyond the statutes governing entry. *See Thuraissigiam*, 591 U.S. at 140. While never drawing a precise line, the Supreme Court distinguished between arrivals and those who have established presence—even domicile—for years in the country's interior. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953); *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Consequently, I recommend the Court conclude that an "inspection" that triggers § 1225(b) can occur anywhere at or near the border or port of entry.[6]

### 2. *Application to Petitioner.*

Here, Petitioner was detained in 2021 in San Luis, Arizona, near the Mexican border no more than five days after his crossing. [Doc. 9-2, at 1]. A Border Patrol agent examined his immigration status and determined that Petitioner was subject to removal as an alien present in the United States without admission or parole after inspection. *Id.*; 8 U.S.C. § 1182(a)(6)(A). While Petitioner was physically "present" in the United States, I recommend the Court find his proximity to the border and the recency of his crossing in 2021 made the Border Patrol agent's examination of his status a proper inspection pursuant to § 1225(a)(1), (3).

I further recommend the Court find that his detention was effected pursuant to § 1225(b)(2). An individual is only subject to expedited removal if they are: (1) an arriving alien or properly designated alien, and (2) they are found to be inadmissible for either misrepresenting their

---

[6] I do not address whether or not the Court should rule a § 1225(a)(3) inspection can *only* occur at or near the country's borders and ports of entry.

citizenship or other material facts, or they did not meet the documentation requirements for admission. 8 U.S.C. § 1225(b)(1)(A) (citing 8 U.S.C. § 1182(a)(6)(C), (a)(7)). In December 2021, a Border Patrol agent found Petitioner inadmissible for entering the country without inspection at a port of entry, charging him under § 1182(a)(6)(A). *See* [Doc. 9-2, at 1]. Because Petitioner's December 2021 detention did not meet the statutory criteria for § 1225(b)(1), I recommend the Court find the "catch-all" of § 1225(b)(2) applied instead. *Jennings*, 583 U.S. at 287.

Section 1225(b)(2) mandates detention without bond but makes an exception for discretionary parole pursuant to § 1182(d)(5)(A). *Id.* at 300. And once § 1225(b) authorizes detention, it continues to govern an alien's release on bond or parole. *Id.* at 301–02. In this case, the Border Patrol agent paroled Petitioner for "humanitarian reasons" pursuant to DHS's alternative to detention program. [Doc. 9-2]. While the record search performed by the immigration officer in July 2025 showed Petitioner had been terminated from the program in 2023, it also showed Petitioner was re-paroled in 2024. Thus, I recommend the Court find that at the time of his detention in July 2025, Petitioner's release on parole was governed by 8 U.S.C. §§ 1225(b)(2) and 1182(d)(5)(A).

**C.     I Recommend the Court find Petitioner's Detention in July 2025 Violated His Statutory Rights.**

I recommend the Court find that Petitioner's detention in July 2025 violated his statutory rights because the United States never properly revoked his parole. First, the immigration officer at the internal checkpoint in 2025 improperly detained Petitioner pursuant to § 1225(b)(1). [Doc. 9-3, at 5]. As discussed above, § 1225(b)(1) cannot apply to an alien, even if unlawfully present in the country, if they are not "arriving" to the country and have lived more than two continuous years in the United States prior to their inspection. 8 U.S.C. § 1225(b)(1)(A)(i). Here, Petitioner had lived in the United States continuously for four years since his release in 2021.

12

Second, the immigration officer failed to provide the written notice necessary to terminate parole. The DHS Secretary enjoys considerable, but not unlimited, latitude under § 1182(d)(5)(A) and 8 C.F.R. § 212.5 to make parole decisions. Parole terminates automatically when an alien departs from the United States or the authorized time period for the parole expires. 8 C.F.R. § 212.5(e)(1). Otherwise, parole may terminate upon written notice when an authorized official determines that "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." *Id.* § 212.5(e)(2)(i). Written notice may be accomplished by a "charging document," which regulation defines as a "written instrument which initiates a proceeding before an Immigration Judge." *Id.*; 8 C.F.R. § 244.1. Neither § 1182(d)(5)(A) or 8 C.F.R. § 212.5(e)(2) entitles the paroled alien to a pre-revocation hearing. *Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1174 (W.D. Wash. 2023). But upon the alien's re-detention, he "shall again be released on parole" if his exclusion, deportation, or removal order cannot be executed "within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i). In order to prevent the alien's re-release, an authorized official must determine that "the public interest requires that the alien be continued in custody." *Id.*

In this case, the record does not contain a listed example of a charging document served in 2025: no Notice to Appear, Notice of Referral to Immigration Judge, and no Notice of Intention to Rescind and Request for Hearing by Alien. *Id.* § 244.1. The record suggests Petitioner's original parole expired July 27, 2023, but he was re-paroled in July 2024 by Border Patrol without indication of an expiration date. [Doc. 9-3, at 5]. The record does include an Order of Removal by Petitioner's detaining officer in July 2025 pursuant to 8 U.S.C. § 1225(b)(1). [Doc. 9-8, at 1]. The only Notice to Appear in the record was issued to Petitioner upon his original grant of parole in December 2021. [Doc. 9-2].

13

This Court and others have found the re-detention of a parolee is unlawful where no proper written notice was issued and no other case-specific determination justifying the revocation of parole was made. *Rustam Rassul v. Field Officer Director*, No. 25-cv-00232, 2026 WL 834737, at *5 (E.D. Ky. Mar. 26, 2026); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025); *Alcide v. de Anda-Ybarra*, No. 26-cv-00249, 2026 WL 622663, at *3 (D.N.M. Mar. 5, 2026). And the Central District of California has found that an expedited removal order cannot qualify as a "charging document" pursuant to 8 C.F.R. § 244.1 because it does not initiate a proceeding before an immigration judge. *N.Y.V.D. v. Santracruz*, No. 25-cv-03404, 2025 WL 3786964, at *4–5 (C.D. Cal. Dec. 23, 2025). I recommend the Court find the Order of Removal here did not constitute a valid "charging document" because: (1) it did not trigger a proceeding before an immigration judge, (2) it issued upon an unlawful application of § 1225(b)(1) to Petitioner, and (3) the record contains no indication the requisite finding to revoke parole was made. Therefore, I recommend the Court find Petitioner's re-detention unlawful.

**D.      Petitioner's Detention Violates Due Process.**

I recommend the Court further conclude that the improper revocation of Petitioner's parole violated due process. "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). However, aliens "on the threshold" of entry have far more proscribed due process rights than aliens who have effected entry into the country. *Thuraissigiam*, 591 U.S. at 140; *Mezei*, 345 U.S. at 212. Because admission to the country is a privilege which Congress may confer pursuant to its "sovereign prerogative," the Fifth Amendment affords Congress near-complete discretion in fashioning procedures for the grant of that privilege. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982). Where an alien can be removed in accordance with those laws, the Supreme Court has recognized detention during removal proceedings is "constitutionally valid" to prevent flight or safety risks

prior to a final determination. *Demore*, 538 U.S. at 523, 528. Furthermore, the Supreme Court has found due process concerns are lessened with detention prior to a final order of removal because it will have a "definite termination point: the conclusion of removal proceedings." *Jennings*, 583 U.S. at 304 (citing *Demore*, 538 U.S. at 529). Thus, the only potential due process claims an alien on "the threshold" of entry may raise will be as-applied challenges. *See Betancourt Barco v. Price*, 457 F. Supp. 3d 1088, 1098 (D.N.M. 2020); *Smith v. Barr*, 444 F. Supp. 3d 1289, 1298 (N.D. Okla. 2020).

However, when statute and corresponding regulation creates procedural entitlements in immigration proceedings, an alien suffers a due process violation when the government fails to honor them. *Cf. Gonzales Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020) (holding an alien's due process rights are shaped by statute, and so relevant inquiry is whether statutory process was followed); *Singh v. Noem*, --- F. Supp. 3d ----, 2026 WL 766228, at *7 (D.N.M. Mar. 18, 2026) (citing *Sierra Immgr. & Naturalization Serv.*, 258 F.3d 1213, 1218 (10th Cir. 2001)). The law requires a finding that an alien's parole had either accomplished its purpose or no longer serves the public interest and written notice for revocation. 8 C.F.R. § 212.5(e)(2)(i). It also requires that DHS reinstate parole if removal is not effected within a "reasonable time" unless DHS makes a new determination that custody serves the public interest. *Id.* Petitioner has lived in the United States for four years without criminal charges or warrants, Border Patrol invoked the wrong statutory provision under § 1225 to detain him, and no finding appears to have been made that the revocation of his parole was proper nor that continuing his detention served the public interest as his immigration proceeding involved a lengthy delay. Therefore, I recommend the Court find Petitioner's due process rights were violated.

15

This Court has previously concluded that a due process violation caused by improper revocation of parole requires immediate release and reinstatement of parole pending the Petitioner's immigration proceedings, unless a proper revocation of parole is made pursuant to the criteria and notice requirements of 8 C.F.R. § 212.5(e). *Alcide*, 2026 WL 622663, at *3; *Perez Bosmenier v. Dedos*, No. 26-cv-00211, at *16 (D.N.M. Apr. 17, 2026) (slip opinion). I recommend the Court order Petitioner's release under the same conditions.

## V.   CONCLUSION

In summary, I recommend the Court GRANT IN PART Petitioner's habeas petition for improper revocation of his parole and violation of due process rights. I recommend the Court ORDER the United States to release Petitioner and reinstate his parole, and not to re-detain him unless Petitioner's parole either expires or is properly revoked pursuant to 8 C.F.R. § 212.5(e)(2).

HON. JERRY H. RITTER
United States Magistrate Judge

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**